Good morning, Your Honors. May it please the Court, I am Bryant McCulley on behalf of the Plaintiff Appellant, Skillstaf, Inc. I would like to reserve five minutes for rebuttal. Skillstaf appeals the District Court's dismissal of this case on the pleadings pursuant to Rule 12b-6. This Court's review is de novo. Skillstaf filed this case on behalf of itself and the class to recover overpayments on hundreds of prescription drugs caused by a conspiracy originated by the nation's largest drug wholesaler, McKesson, and the nation's publisher of Electronic Drug Pricing Data, First Data Bank. The defendants in this case are large retail chain pharmacies that benefited from the conspiracy and directly received the overpayments from Skillstaf and the class. It is undisputed that if Skillstaf's allegations are taken as true, as they must at this stage, defendants received hundreds of millions of dollars in windfall profits as a direct result of the fraud. McKesson and First Data Bank were sued by a similar class of third-party payers in the District of Massachusetts. That litigation, known as the Carpenter's litigation, was settled by McKesson for $350 million. No defendant in this case was a party to the Carpenter's litigation or contributed any consideration to the McKesson settlement. However, defendants now claim that they were the intended third-party beneficiaries of a general any-other-person covenant not to sue that was hidden in a release provision in the McKesson settlement agreement. The district court in this case agreed and dismissed Skillstaf's case on the pleadings, finding that its claims were barred by the covenant not to sue. The district court's dismissal of this case on the pleadings must be reversed for two reasons. First, the McKesson settlement agreement contains a California choice of the circumstances presented here. Second, and more fundamentally, that any other covenant not to sue is unenforceable for lack of due process because the Carpenter's opt-out notice did not mention a covenant not to sue and instead specifically advised class members that not opting out would only preclude them from pursuing claims against McKesson. I would like to begin by addressing the district court's failure to allow discovery of extrinsic evidence under California law because the basis for reversal on this point is straightforward. As I mentioned, the McKesson settlement agreement contains an explicit California choice of law provision and that is found at ER 139. As stated by this court in Atlanta Cancer Care, A. Kemp Fisheries and Trident Center, it is reversible error under California law for a district court to dismiss a case on the pleadings where one party claims that is the exact argument skill staff made in this case. Under California law, the case must proceed beyond the pleadings so that the parties can take discovery of extrinsic evidence and the court can consider that extrinsic evidence at summary judgment. Can you address the argument made in the brief by opposing counsel that, in fact, there was extensive extrinsic evidence considered by the district judge? Well, Your Honor, that's simply not the case. The standard under California law is that the court must consider all relevant extrinsic evidence at summary judgment. And in this case, there simply has been no discovery whatsoever of the contracting party's intent regarding the any other covenant not to sue. There hasn't been any discovery on that issue. Defendants argue that the district court's decision can be excused because the district court considered certain pleadings that were filed in the Carpenter's litigation. Well, transcripts as well, correct? Judicial notice of the contents of those matters, of those filings? Yes, Your Honor. The district court in this case considered the transcript of the final approval hearing in Carpenter's. The district court also looked, considered, and took judicial notice of certain pleadings filed by the parties in the Carpenter's litigation. But again, the standard under California law is not the post hoc justifications of the parties. It clearly requires extrinsic discovery of the intent of the parties at the time of contracting. And here, there simply has been no discovery on that issue. For example, what if SkillSaf served discovery on McKesson and there was an email among McKesson executives that said, you won't believe this, we didn't intend it, but somehow this form bore their plate, any other person covenant not to sue was, you know, hidden in the release provision. And that may potentially bar hundreds of millions of dollars in claims against our customers, the retail chain defendants in this case. Certainly, if that evidence was uncovered, it would be both relevant and admissible under California law. And this was made clear in the California Supreme Court decision in Hesby Ford Motor Company, which, like this case, involved a situation where a third-party defendant sought the protection of a general all-other-person release. And in that case, the California Supreme Court rejected the very arguments that the parole evidence rule precludes consideration of extrinsic evidence to contradict the plain language of the alleged unambiguous all-other-persons release. And the California Supreme Court was clear. They held, quote, extrinsic evidence is, quote, admissible to show mutual mistake, even if the contracting parties intended the writing to be a complete statement of their agreement. And so, therefore, we think California law is crystal clear on this point. But at the time the settlement was entered into, and Skill Staff certainly knew that that provision was in there, there was no longer a mistake as to what that the fact that the provision was part of the agreement, correct? To be clear, Your Honor, Skill Staff was not a named plaintiff or class representative in the California court. I understand, but Skill Staff, I mean, I guess I'm raising the issue of the distinctive relationship of Skill Staff to the settlement and order that the district court cited and that the parties make much of in their briefs. Well, Skill Staff was an absent class member in the Carpenter's litigation. In preparing to file this lawsuit, we reviewed the Carpenter's settlement agreement, and particularly the provision that we're talking about, this general any-other-person covenant not to sue. And we wrote McKesson a letter that specifically asked if that provision or any other provision in the agreement was intended to bar claims or release claims against defendants, the retail chain pharmacies. And they responded with a letter that says, no, that was not their intention. And so that was before the court, correct, in Massachusetts? And then so the existence of that e-mail exchange and the district court of Massachusetts reaction to the issues that that uncovered, that was all before the district court in this case, correct? Yes, Your Honor. The transcript, the letter, and certain pleadings from the Carpenter's litigation were before the district court in this case when it made its decision. But no actual discovery of the contracting party's intent was undertaken in this case. And we think that under this court's reversals in Atlanta Cancer Care and Trident Center, this case must be reversed so Skill Staff has the opportunity to take that discovery on those issues. If there's no further questions on the issue of extrinsic discovery, I would like to turn now to the second and more fundamental issue before the court. And that is whether the any other person covenant not to sue is unenforceable for lack of due process or the class never received adequate notice of it or the opportunity to avoid being bound by it. The Carpenter's opt-out notice, which is found at ER 61 to 70, did not mention a covenant not to sue or otherwise inform class members that not opting out could prevent them pursuing claims against any entity other than McKesson. To the contrary, the opt-out notice contained numerous statements that remaining in the class would only impair the ability of class members to pursue claims against McKesson. After the opt-out period had passed, critically, McKesson settled the litigation for $350 million. Critically, although the settlement agreement contained the hidden any other covenant not to sue that defendants seek to use as a defense in this case, the Supreme Court held that in order for a class action judgment to bind class members, they must receive due process, which includes adequate notice and an ability to opt out after fully understanding the rights that they will be giving up if they do not do so. Are we reviewing the district court's decision with respect to due process issues for the class as a whole, or are we reviewing the district court's decision on the due process issues as to skill staff? Well, Your Honor, we argue, we believe that the district court in this case erred because it limited its analysis to whether the covenant not to sue was enforceable against skill staff and skill staff alone. And we believe that that was reversible error because the plain language of the carpenter's final judgment gives skill staff the right to have the fundamental due process issue, whether any other covenant not to sue is enforceable against the class decided in another proceeding, decided in this case. And I think it's important that this court recognize that skill staff was the only class member that timely objected to the due process issue before the carpenter's court. And therefore, skill staff was the only class member that could appeal this due process issue to the First Circuit. And skill staff made clear in the carpenter's litigation that it intended to do so. And it was only after skill staff made it known that it was going to appeal that due process issue that McKesson agreed to include specific language in the case.  it limited its analysis to whether the covenant not to sue was enforceable against skill staff with the right to have the fundamental due process issue as to the class decided in this proceeding. Kagan. Kagan. Well, is there anything in the district court's order that would prevent another class, a putative class representative, from raising, from either filing the same case, or would it be possible for a class member, other than skill staff, who had not been given an opportunity for a second opt-out and had received only the notice that you pointed out, that, in fact, they do have due process problems, that would entitle them to proceed with the suit against the pharmacies, even though they received the proceeds from the settlement that McKesson made in the Carpenter's litigation? Is there anything that would prevent that from happening? Yes, Your Honor. Why? There's two provisions that would prevent or could potentially prevent other class members from raising this due process issue on behalf of the class. One of those is the All Writs Act provision in the Carpenter's final judgment, which prevents class members from doing anything that would frustrate the court's  And so, therefore, if any of the class members were to do anything that would frustrate the court's, and they would have to raise this due process issue on behalf of the class members, then there's no reason to believe that the dual-process is clearly something that could still be raised, isn't it? Well, Your Honor, it's the It may not prevail, but that's the issue on the merits. That's not the ability to raise it and have a hearing on it. Well, Your Honor, it's interesting you say that, because in this case, defendants argue that the collateral attack doctrine actually prevents skill staff's ability to raise the due process issue in this case, notwithstanding the clear language and the final judgment that provides skill staff without right. And so it's It's a very good question to ask them, but I'd like you to address the question of whether there's anything that would have prevented another class representative from making the challenge that I've described. Well, Your Honor, other than the All Writs Act provision, the only thing I can point to you is that in the disreport's decision in this case, the disreport dropped a footnote that said that there would be nothing to prevent other class members from rescinding the settlement agreement and made that a prerequisite for attacking the covenant not to sue under due process grounds. And as we explained in our brief, under this Court's decision, the HESI v. Sprint and numerous other decisions, we think, frankly, that the district court misunderstood what was required for a class member to raise a due process issue. The district court in Massachusetts or here? Here, Your Honor. Here, Your Honor. In this case, in the decision dismissing skill staff's claims, the district court dropped a footnote and said, I'm not going to address whether another class member other than skill staff received due process or whether they, as a part of that footnote, specifically said that in order to do so, they would have to rescind the settlement agreement. And so, therefore, that certainly is a barrier. I'm not saying it's not possible for another class member to raise the due process issue, but certainly between the All Writs Act provision, the arguments that have been made in this case, and the likelihood that McKesson would seek to enjoin any class member that tried to raise the due process issue, those are certainly barriers to another class member doing so. You have about two minutes left, Your Honor, to reserve. Yes. Thank you. Good morning, Your Honors. May it please the Court. Fred Kelly, along with Sarah Andre, for New Albertsons and Super Value. I'm also arguing on behalf of all of the Apelli Defendant Retail Pharmacies. There are two key issues in this case. First, is skill staff barred by the final order in the Carpenters case from collaterally attacking that judgment in this case? And secondly, does the clear and unambiguous language of the covenant not to sue, which applies to any other person, prohibit skill staff from bringing this lawsuit? The answer to both of those questions is yes. Should the Court seek to look beyond that, though, it is also clear from the pleadings in the papers filed below that skill staff's claims are untimely under the relevant statutes of limitation, and they have failed to adequately plead their claims. Should the district court have converted the motion to dismiss to one for summary judgment, allowed limited discovery, and then made a decision based on that additional discovery? It certainly could have followed that procedural path, Your Honor, but as the district court expressly said, citing the Raines-Pasta case, it can't and did take judicial notice of a considerable amount of information that was presented to the court in the Fairness hearing in the Carpenters case. They were allowed to do that, or the district court is allowed to do that, under the rules. So I think the functional equivalent is the same. I'm not sure that procedural step needed to be taken. And turning to the discovery issue for a moment, the statement has been made that discovery must be allowed before a decision like this can be rendered under a California contract. That is not what the cases say. The cases say that a case cannot be dismissed on the pleadings if a proper argument of ambiguity is raised and extrinsic evidence is not considered. Extrinsic evidence was considered here. This, at the end of the day, quite frankly, is a matter of docket control. Well, perhaps, but I mean, we are talking about a lot of money and fairly – it's hard to see why limited discovery wouldn't have been proper in this case. It may not have led to any different conclusion, but to say, well, I've read the transcript, I've looked at the pleadings in any other case, and I've concluded then that you can't pursue discovery outside the record, or this is sufficient, so I don't think anything can be developed outside the record is a little odd. It might be odd in some other cases, Your Honor, but I do believe that because of the particular participation of skill staff – and I'd like to review the bidding on that for a moment, if I may – that it was perfectly appropriate here. So as counsel referred to earlier, the notice of settlement went out. It had the full release and covenant not to sue in it. Skill staff reviewed that. It sent a letter to McKesson's counsel asking if the language released any claims against the retail pharmacies. McKesson replied, quite honestly and directly, no. It was a perfectly honest and direct response to the question that was asked. As far as I know, neither McKesson's counsel nor anyone else is under the affirmative obligation to educate skill staff's counsel as to the scope of the covenant not to sue. Well, that wasn't good enough, apparently, and so they brought a motion, a motion to strike the any other person language from the agreement and also as a limited objection to the class settlement agreement. In that motion, which is at the record excerpt at page 151, they cite the Brinton case, which is also in our brief, that says, you know, if you leave this language in here, it can be used under the Brinton case to prohibit us from bringing a case against the retail pharmacies, because that case held that a third-party beneficiary would be bound by a release such as this, and under the facts of that case, the plaintiff's counsel there had participated in both settlements, just as skill staff did here. So skill staff knew the lay of the land long before it got to the fairness hearing. McKesson opposed that motion, put forth the letter, put forth the response, and also stated in there, we bargained for this. This is not our first rodeo. We know if this case is settled, then it's not the end of the day. Retail pharmacies and parties like them will sue us, and we want this to end. We want to buy peace, I believe are the exact words used. We don't want to be dragged into other litigation. The Court heard argument on that at the fairness hearing, and during the fairness hearing, the point was made by skill staff that they didn't receive notice, they didn't receive a second opt-out and all of those things, and Judge Saris was quite surprised by that, and her comments reflect that, although she does address that in her later opinion, and I'll get to that. But just as important, McKesson repeats what it said in its letter. Class counsel who drafted the agreement, primary party drafting the agreement, also skill staff's lawyers when they filed this complaint said nothing, nothing about the intent of the parties drafting this phrase. Counsel for other third-party payers, excuse me for the alphabet soup, TPPs, it's thrown 30 percent of the third-party payers, Mr. Cohn from the Danenberg firm, and it's in the record at page 180, goes on for about a page of testimony at the fairness hearing about how the third – and their name was also on that notice – how the third-party payers had had telephone calls about this and responded to inquiries. Everybody knew this was the end of the line. Everybody knew this was a lot of money. I believe the term eye-popping was used several times, and that was fine with them. They got it. There was no need to do anything else. They wanted the case to end. They wanted to get their piece of the $350 million McKesson paid, and they wanted to get on with their lives. This is all undisputed. It's all in the record. Judge Ilston had all of this before her. On August 3rd, 2009, Judge Saris enters her order. She addresses this issue and says that skill staff can have a second opportunity to opt out if it wants to, recognizes the objection, denies the motion, refuses to clarify the language, and refuses to strike it. That same day, skill staff files a motion to alter or amend the judgment under Rule 59e, basically makes its same arguments all over again, and then asks the court if it will modify the agreement in the order to insert certain language. And I think this part is quite important. And it's at page 150 of the record appendix. The original language – excuse me, I think I miscited that. It is at page – I'm sorry. It's in Exhibit B to the Request for Judicial Notice that skill staff filed with this Court on page 9. What skill staff asks for in that motion to alter or amend is the following. Notwithstanding the foregoing, nothing herein shall preclude the Court in Skill Staff Inc. v. CVS Caremark from determining the enforceability or applicability of the, quote, any other person, unquote, language in paragraph 15 of the settlement agreement. What they got was very different. What they got was, to the extent otherwise permitted by law, nothing in the foregoing order, referring to the August 3rd order, precludes skill staff from raising the same request to the Court to determine the enforceability and applicability of the any other person language. They got that. That language doesn't say that they're going to win. It says that they have the opportunity to raise it. They had that opportunity, and Judge Ilston filed against them. So that's what went into the final order. Given what you've described, if I can interrupt for a second, what additional discovery would have been relevant to the issue of the party's objective in the intent? And by objective, I mean what you can fairly discern from the documents as opposed to the subjective intent that perhaps may not be appropriate to make a basic decision on. I honestly can't think of anything, because at the fairness hearing, you had everyone in the room that had anything to do with the drafting of this agreement. And they made their understanding very, very clear. I don't want to beat a dead horse till the bones show, but I think it is notable that Skillstaff's counsel in this case that was originally filed was class counsel in New England Carpenters and said nothing, didn't raise his hand and say, well, you know what, we didn't really mean for this to be. Said nothing. McKesson was very clear, as was counsel for the other third party payors, who was also on the notice. So I'm not sure how many bites at the apple Skillstaff gets. They got two in federal court in Boston in front of Judge Saris. They got a third one here by just being in front of Judge Ilston. I don't think they get more. And I think Judge Ilston made quite clear in her decision that she looked at everything and it was wanting. But I'm not sure we even need to go there. If I may turn for a moment, in somewhat reverse order, to the due process argument that has been made by Skillstaff. This court's cases are quite clear, particularly the Raines-Pasta case v. Visa and class plaintiffs versus the city of Seattle. That if you get notice, if you retain a lawyer, if you show up at the fairness hearing, you've gotten all the due process you are due. And since Skillstaff got more than that, they, I think, got overdue process. They participated as much as they possibly could in the fairness hearing and the events leading up to it. In returning for a moment to the discovery issue, the fairness hearing, as I think anyone knows who's participated in class action, that's the place where you put forth all of your evidence to support the objections you have. If their objections there were the same as the objections here, they had the opportunity. They didn't ask Judge Sarris if they could get more than they had already as far as intent goes. They didn't even raise that very issue. And it was quite clear that they believed that the Brinton case would bar them from bringing this lawsuit. So it's a little curious now, and they were represented by a different law firm that represents them here today and now represents them in the underlying case. But it's a little interesting as to why that wasn't brought up. They'd known about it since April, so it's not like they were surprised. It was raised in June, the fairness hearing wasn't until July. So they had more than enough opportunity to gather what they wanted to gather and make their pitch to Judge Sarris, which as we all know is the way this is almost always done. So under those cases, if you've got a lawyer and you show up and you argue, you're bound by that judgment. And that's what happened here. It happened twice, in fact. And it's very, very clear that that judgment applies to skill staff. And I think it's worth noting here that to the otherwise permitted by law language doesn't rescue their argument. That's what the law says. The law says that if you show up with a lawyer and you have a hearing, you're bound by that judgment. And I think it also bears noting what they're asking for in this proceeding and what they did. So what they did was, they took the money. It took the money. It's very clear in the transcript that skill staff's attorneys say, we're getting a substantial amount of this money and we want to get it now. So they took the money. They were an objector, so they had the right to appeal. They waived the right to appeal. They had this language put into the order, which I don't believe gets them anything more than they have. And now they want this court to basically overturn or rewrite the settlement agreement from the New England Competitors case. That is not permitted. The law is crystal clear. A settlement agreement in a class case particularly is thumbs up or thumbs down. The court does not rewrite it. So if they had followed the appellate path to the First Circuit, first of all, they wouldn't have gotten the money. Secondly, they would be limited, the First Circuit would be limited to its relief, thumbs up or thumbs down. They want to come into this court, they want to keep the money, and they want the court to rewrite the agreement by striking any other person language. That is not permitted. There is no precedent for that. The cases that they cite in support of the fact that a prior class action is not always a bar are completely an opposite. The Hess case involved different claims and different facts, and the court so found. That is also true for the Syverson case, which involved a private release, not a class action settlement with a release reviewed by a court pursuant to fairness hearings, and the Frank case involved after recurring events. The prior settlement was in 1980, and these were new policies that happened. None of those cases address this situation, and no authority provided by skilled staff handles that at all. In fact, the Barajas case, which they cite in their reply, makes it clear that you can reserve a right, but that doesn't mean that the law gives you the right you want to reserve. That was a False Claims Act case, and the relator believed there were two theories of recovery, he settled on one and reserved the second. Meanwhile, the Federal Government settled the entire case, and this court said in Barajas, yeah, you reserve the right, but since the claim belongs to the Federal Government and they settled it, you don't have it anymore, so to the extent otherwise permitted by law, puts them in the same place. I think if the court goes beyond the binding effect of the judgment in the Carpenter's case and looks at the language of the agreement, any other person is clear and unambiguous. And under the cases we cite, Molsky and Gates and Nemmer, it's clear that when the court construes a consent order or a court order, it looks within the four corners. If you look within the four corners of this agreement, it was incorporated into the order. Any other person means any other person. And this Court's prior precedent makes a lot of sense, particularly in class action cases. Do we want a situation where any member of the class at any time can file a collateral case and say, raise their hand and say, there's an ambiguity there, I want some discovery? I don't think any other person means any other person. I think it means everybody but me. I think it means some people. I think it means people from another planet. There's no good way, it seems to us, to run a judicial system if anyone can always come in and raise the specter of ambiguity, reopen things, and then essentially try to force a settlement, which appears to be the endgame in many of these cases. Turning to the situation where you're construing as a California contract, I don't believe it is required, first of all, that discovery be given here in any way, shape, or form. That is because the California Supreme Court in the Doar case, which we cite in our brief, has pulled back Pacific Gas. Pacific Gas basically was a bit of a free-for-all, and if you sort of raised your hand and said ambiguity, you're entitled to discovery. What the Court said in Doar was, and it was particularly, it was very well teased out by the concurring opinion, was that what we're going to do now is we're going to look at ambiguity as applied to the facts of the case. We're not going to look at ambiguity in the cosmic sense of, could this be ambiguous under any other circumstances? And we need a reasonable alternative meaning. If you apply that learning from the Doar case, which is in 2006, to this case, there's no place to go other than the fact that any other person covers the retail pharmacies. This is not a form release as the Hess case and the Volley case. That was a form release with boilerplate. And you had the parties releasing each other with general releases, and then in one case, the lawyer for one of them said, by the way, that released a malpractice claim. That's not the situation here. You have a custom negotiated and crafted agreement that people participated in that focuses specifically on the people involved with those claims. The retail pharmacies, though not by name, are mentioned generally in both the New England Carpenters' complaint and this complaint. It's not a surprise. It's not a situation where a broad document, a form document, boilerplate is being misused for the wrong purpose. This is exactly what this was intended to do. Mr. Bartlett's time is up. You are now over your time, but if you want to make a few conclusions, Mark, that's fine. I would say in conclusion that Judge Ilston's decision should be upheld, and should the Court seek to look for the reasons we've stated, and should the Court look beyond that. We do believe that the claim is untimely, as Judge Saris did observe in her decision, and also that they don't plead adequate claims against the retail pharmacies. Thank you, counsel. Thank you. Your Honor, opposing counsel suggests that Pacific Gas has been pulled back by the California courts. However, defendants do not cite a single California case in which a court has dismissed a case on the pleadings and denied discovery of extrinsic evidence, as the district court did here. In fact, the Britain case that counsel relied upon in his argument was a summary judgment case. In their brief, they did not cite a single case in which a court has dismissed a case on the motion to dismiss and deny discovery of extrinsic evidence. With regard to the fundamental issue, the lack of due process, no court has ever held, like the district court did here, that a class-action defendant like McKesson can issue a misleading opt-out notice, wait for those class members, if any, to discover it, let them object, and then provide only those objecting class members with a second opt-out opportunity. This is because such a rule would eviscerate the critical role that class-action objectors play in ensuring that class-action settlements are fair and in the best interest of the class. If the class-action objector accepts the second opt-out opportunity and opts out, it immediately loses standing to appeal the due process issue on behalf of the class. However, if it rejects that second opt-out opportunity and appeals, or otherwise preserves its ability to have that issue litigated in another proceeding, as Skill Staff specifically did in this case, it would then be subject to the district court's flawed reasoning that it is bound by the judgment, because it rejected the second opt-out, that only it was offered, and therefore it cannot protect the due process issues on behalf of the class. And Skill Staff, had Skill Staff opted out, could it have continued with this lawsuit? Yes, Your Honor, it certainly could have. So that's So that's Well, no, Your Honor, in Churchill Village Does that answer some of your question? No, Your Honor, it does not. And I think Churchill Village, the General Electric case, is particularly persuasive on that point. In that case, this Court rejected the argument that a class-action objector loses the ability to appeal a class-action settlement because it rejected an opt-out opportunity and could have avoided being bound by the judgment that it was complaining about. That reasoning directly applies in this case. And given the specific language in the Carpenter's final judgment giving Skill Staff the right to have the fundamental issue of the enforceability of the covenant not to sue decided in this case, this Court should treat this case no differently than if it were on direct appeal following the Carpenter's final approval hearing, a hearing in which the Carpenter's Court repeatedly acknowledged the glaring due process violations in this case with regard to the covenant not to sue. And in light of the indisputable lack of due process with regard to the covenant not to sue, Skill Staff asked this Court to find it unenforceable as a matter of law and reverse the district court's decision. I would like to just make one comment. Roberts. You are over your time, but I'll allow you a couple more. Thank you, Your Honor. Two very quick points. Counsel argues that the Rains case and other race judicata or issue or claim preclusion cases bar Skill Staff from raising the due process issue in this case due to the collateral attack doctrine. Those cases are totally an opposite. In those cases, there was a final judgment, and the defendant raised the final judgment as a defense to a separate collateral attack. Here, that is not the case. McKesson, the defendant in the Carpenter's litigation, specifically reserved the very issue that defendants are now arguing are subject to res judicata. And I think that's an important issue for this Court to note. McKesson paid this $350 million for the settlement. Defendant's problem is that at the end of the day, McKesson chose to protect itself and not the defendants. McKesson was adamantly opposed to providing a second opt out for the entire class and pay for due process for the entire class, as the Carpenter's district court repeatedly offered it the opportunity to do at the Carpenter's final approval hearing. Instead, McKesson chose to allow only Skill Staff an opportunity to opt out in an effort to try to pick it off and separate it from its class claims. Thank you, counsel. Thank you, Your Honor. If I give you more time, I'm going to have to allow you to close the counsels before we're time to stand up. Yes, thank you. I do appreciate it. It's a complicated case. I know we had our time limits have constrained both of you, but we appreciate the presentations, excellent on both parts, and the case will be submitted for decision.
judges: Rosenthal, Fletcher B. , Thomas